IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LANDY THOMPSON,

                        Petitioner,

         vs.                     Civil Action No.
                                  9:04-CV-0865 (TJM/DEP)

D.B. DREW, SUPERINTENDENT,

                        Respondent.

_____

APPEARANCES:          OF COUNSEL:

FOR PETITIONER:

LANDY THOMPSON, *pro se*

FOR RESPONDENT:

HON. GLENN T. SUDDABY    CHARLES E. ROBERTS, ESQ.
United States Attorney       Assistant U.S. Attorney
Northern District of New York
100 S. Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

      Petitioner Landy Thompson, a federal prison inmate as a result of a

1998 District of Columbia drug conviction, has commenced this

proceeding seeking federal habeas review of his sentence calculation by the federal Bureau of Prisons ("BOP").  In his petition, Thompson challenges the BOP's award of educational good time credits based upon college classes taken principally while he was incarcerated within the custody of the District of Columbia Department of Corrections ("DCDC"), arguing that he did not receive the full measure of credits due under the relevant statutory and regulatory provisions.

Having carefully reviewed the record now before the court – although significantly handicapped in view of the lack of any explanation of how that agency arrived at its determination – I find that the DCDC's calculation of educational good time credits associated with one of the two disputed periods of college course work may well not have been consonant with the applicable provision of the District of Columbia Code. Because the District of Columbia Code is not considered a law of the United States for purposes of 28 U.S.C. § 2241, however, I find that this court is powerless to remedy the situation upon habeas review.  As to the second course, completed at Georgetown University, I find that because that course was completed after petitioner was transferred into custody of the BOP, that agency was empowered, but failed, to consider an award of

educational good time credits consistent with the BOP's policy regarding such credits, instead improperly relying upon a certification from the DCDC regarding that class.  Accordingly, I recommend that the BOP be directed to reconsider petitioner's eligibility for an award of educational good time credits in connection with the Georgetown University course work, consistent with its policy regarding such credits.

I.    BACKGROUND

The facts relevant to petitioner's habeas claims are relatively simple, and not particularly controversial.  Petitioner was sentenced in the District of Columbia Superior Court on October 14, 1998 to a term of imprisonment of between nine and twenty-seven years on counts of unlawful possession with intent to distribute, and distribution of, cocaine, in violation of D.C. Code § 33-541(A).  *See* Zgrodnik Declaration (Dkt. No. 10) Exh. 1-A.  Pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Pub. L. 105-33, 111 Stat. 251 (codified at D.C. Code § 24-131), petitioner was transferred by the DCDC into the custody of the BOP on October 31, 2000.[1]

_____

[1]      Pursuant to the Revitalization Act, inmates confined within the District of Columbia's Correctional Complex in Lorton, Virginia were transferred to penal facilities

3

While in custody of the DCDC, and later the BOP, petitioner attended courses at the University of the District of Columbia from January 13, 1999 through May 15, 2000, and at Georgetown University between September 4, 1999 and December 15, 2000.  The DCDC conferred eighteen days of educational  good time credits for the District of Columbia course work, and nine days resulting from the classes taken at Georgetown, for a total of twenty-seven days of academic credits. Zgrodnik Decl. (Dkt. No. 10) Exhs. 1-C, 1-D.   BOP records confirm that those educational good time credits were certified by the DCDC, and have been factored into the calculation of petitioner's sentence.[2]  Zgrodnik Decl. (Dkt. No. 10) DOC 1-F.

The record now before the court reflects that this is not the first challenge petitioner has launched with regard to educational good time credits arising out of the two periods of college course work now at issue.

---

operated or contracted for by the BOP.  *See Crawford v. Jackson*, 323 F.3d 123, 125 (D.C. Cir.), *cert. denied*, 540 U.S. 856, 124 S. Ct. 150 (2003).  As part of that Act, sole authority over all parole release decisions regarding D.C. Code felony offenders convicted in D.C. Superior Court now lies with the United States Parole Commission. *See Simmons v. Shearin*, 295 F.Supp.2d 599, 602 (D. Md. 2003).

[2]      While at FCI Ray Brook petitioner has enrolled in other courses, including an alcoholism and substance abuse studies course administered at the facility, as well as college level psychology and human relations classes, and has been given additional credit for those courses.  Zgrodnik Decl. (Dkt. No. 10) Exhs. 1-F, 1-G, 1-I, 1-J.

Although the court has not been provided with a full set of documents pertaining to that proceeding, it appears that petitioner sued various defendants including, *inter alia*, the District of Columbia, in or about 2003 claiming that the DCDC had not awarded him any educational good time credits based upon the disputed studies, resulting in the issuance of an order by the Superior Court for the District of Columbia on August 7, 2003 directing an explanation by prison officials. *See* Zgrodnik Decl. (Dkt. No. 10) Exh. 1-E.  In response, District of Columbia officials retrieved archived records, which apparently confirmed that petitioner had indeed received no sentence credits for the course work at issue. *Id.*  DCDC personnel were directed by the D.C. Corporation Counsel to send a document pertaining to the course work to FCI Ray Brook "with instructions to award plaintiff the appropriate number of Educational Good Time credits (27), that he has earned." *Id.*  There is no indication in that directive, however, as to how it was determined that twenty-seven was the proper number of credits to be awarded.  *See id.*

In late 2003 or early 2004, petitioner commenced efforts to convince authorities at FCI Ray Brook, as his lawful custodian, to confer additional educational good time credits based upon his participation in classes at

the University of the District of Columbia and Georgetown University.

Zgrodnik Decl. (Dkt. No. 10) Exh. 1-K.  In response FCI Warden D.B.

Drew, in a memorandum dated January 28, 2004, advised petitioner that

the BOP was not authorized to administer the District of Columbia's

educational good time credit program for those inmates who had

successfully completed eligible courses while confined in DCDC custody.

*Id.*  That memorandum also noted that contact had been made with Ms.

Judy Lyons, Deputy Warden – the person apparently authorized to

approve DC Code educational credits – who advised that Thompson's

case had been reviewed by the agency, which was adhering to its position

regarding certification.  *Id.*

Petitioner persisted in his efforts to rectify the perceived error by

filing a request for administrative remedy, dated February 23, 2004, at FCI

Ray Brook.  Zgrodnik Decl. (Dkt. No. 10) Exh. 1-L.  That request was

denied by memorandum authored by Warden Drew on March 8, 2004,

reiterating the position previously outlined by the warden regarding the

issue.  *Id.*  Petitioner's request for review of that determination was denied

on April 28, 2004, by memorandum advising the petitioner that the "[BOP]

is not authorized to award [petitioner] EGT credits for classes completed

6

while confined with the D.C. Department of Corrections, unless this credit has been verified by D.C." *Id.* Petitioner's further appeal within the BOP was denied on July 2, 2004 by Harrell Watts, Administrator of National Inmate Appeals. *Id.* Exh. 1-N.

II.    PROCEDURAL HISTORY

Petitioner commenced this proceeding on July 22, 2004, and later filed an amended petition on October 12, 2004.  Dkt. Nos. 1, 8.  A response to Thompson's original petition was submitted on behalf of FCI Ray Brook Superintendent D. Drew, the named respondent, on October 22, 2004.[3]  *See* Dkt. No. 10.  Petitioner has since submitted a reply, or "traverse", which was filed on November 19, 2004.  Dkt. No. 15.

This matter, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

        A.    Jurisdiction Under Section 2241

_____

[3]    On November 9, 2004 respondent later filed a memorandum in opposition to Thompson's amended petition, though that further response merely consisted of a memorandum reiterating the arguments set forth in the earlier iteration, filed on October 22, 2004.  Dkt. No. 14.

_____Thompson's petition seeks habeas intervention under 28 U.S.C. §

2241.  That provision, which has evolved over time and traces its roots to

the Judiciary Act of 1789, Ch. 20, § 14, 1 Stat. 81-82, empowers the

federal courts to issue writs of habeas corpus in cases involving prisoners

held "in custody, under or by colour of the authority of the United States."

*Triestman v. United States*, 124 F.3d 361, 373 (2d Cir. 1997) (quoting

*McCleskey v. Zant*, 499 U.S. 467, 477-78, 111 S. Ct. 1454, 1461 (1991));

*see also Duamatef v. INS*, 386 F.3d 172, 178 (2d Cir. 2004).

In his motion, respondent does not challenge the court's jurisdiction

to entertain Thompson's section 2241 claims.  Since Thompson's petition

addresses the execution of a sentence, as distinct from raising claims

related to an underlying conviction and resulting sentence, it is properly

brought under 28 U.S.C. § 2241 in this, the district of his confinement at

the time of filing.  I therefore find that this court is vested with jurisdiction

to address Thompson's petition.  *See Poindexter v. Nash*, 333 F.3d 372,

377 (2d Cir. 2003) (prisoner may challenge execution of sentence such as

calculations by the BOP of credit to be given for detention under section

2241); *Billiteri v. U.S. Bd. of Parole*, 541 F.2d 938, 947 (2d Cir. 1976)

(complete discharge or release on parole properly sought under section

8

2241); *see also Owens v. Gaines*, 219 F.Supp.2d 94, 95-98 (D.D.C. 2002) (United States district court proper place for challenge to parole revocation by United States Parole Commission, even when such parole arose out of D.C. Superior Court conviction).

B.     Merits Of The Petition

In his petition, Thompson challenges the calculation of his sentence, arguing that he is entitled to additional credit for college courses taken while in the custody of the DCDC.  Specifically, petitioner contends that the DCDC failed to award and certify to the BOP all of the 130 days of educational good time credits to which he was legally entitled, instead having been credited with only twenty-seven for the courses in dispute. *See* Amended Petition (Dkt. No. 8) Attachment ¶ 3.  As relief, Thomas requests that he be credited with an additional 103 days of educational good time credits.  *Id.*

The court's role in a habeas proceeding such as this is to insure that any sentence calculation made is congruent with applicable federal statutory and constitutional provisions.  *See Poindexter*, 333 F.3d at 377-78 (citing 28 U.S.C. § 2241(c)(3)).  The function of a habeas court is not to usurp the role of the Parole Commission or Bureau of Prisons, or to

9

substitute its judgment based upon what the court deems to be fair.  *See Tisdale v. Menifee*, 166 F.Supp.2d 789, 791 (S.D.N.Y. 2001) (citing, *inter alia*, *United States v. Montez-Gaviria*, 163 F.3d 697, 700-01 (2d Cir. 1998)).

Under the Revitalization Act, the BOP is obligated to administer the sentences of the D.C. Code offenders in its custody; such inmates are subject to any law and regulation applicable to U.S. Code offenders that is consistent with the D.C. sentences imposed.  D.C. Code § 24-101; *Simmons*, 295 F.Supp.2d at 602.   The D.C. statute and regulations, however, do not create any liberty interest in parole – the Parole Commission retains the power to "amend or supplement" the D.C. rules. D.C. Code § 24-131(a)(1); *Moore v. Bledsoe*, No. Civ. A. 7:04-CV-5595, 2005 WL 1243422, at *5 (W.D. Va. May 25, 2005); *Simmons*, 295 F.Supp.2d at 602-03.

In furtherance of its responsibilities in this regard, the BOP has devised Program Statement Number 5884.02, entitled *Educational Good Time Sentence Credit for D.C. Code Offenders.  See* 28 C.F.R. § 523.30 *et al.*; *see also* Zgrodnik Decl. (Dkt. No. 10) Exh. 1-B.  The "Purpose and Scope" section of that statement provides that

[t]his policy applies to D.C. Code offenders in Bureau custody who committed their offenses before August 5, 2000 and completed designated programs successfully while in Bureau custody on or after August 5, 1997. . . . Under the D.C. Revitalization Act, effective August 5, 1997, the Bureau is obligated to administer D.C. Code sentences for those D.C. Code offenders currently in, or subsequently transferred to, Bureau custody.  Consequently, D.C. Code offenders who successfully completed academic programs in D.C. Department of Corrections (DCDC) custody, or in Bureau custody prior to August 5, 1997, are not eligible for [District of Columbia educational good time] under this policy.

Zgrodnik Decl. (Dkt. No. 10) Exh. 1-B, at 1-2 (internal lettering and citations omitted); *see also* 28 C.F.R. § 523.30 *et seq.*

As can be seen, the designated BOP implementation policy on its face does not apply to petitioner's course work at the University of the District of Columbia, since that program was completed on May 15, 2000, at a point in time when petitioner remained in the custody of the DCDC. *See* Zgrodnik Decl. (Dkt. No. 10) Exh. 1-C.  Despite respondent's argument to the contrary, however, that policy does squarely apply to the Georgetown University course work, which was reportedly completed on December 15, 2000, *after* the transfer of petitioner into BOP custody.  *See id.* Exh. 1-D.  The BOP therefore abused its discretion by not applying program statement 5884.02.

Instead of applying the relevant BOP provision to petitioner's

11

Georgetown University studies, it appears the BOP mistakenly considered itself powerless to award petitioner more than the number of educational good time credits certified by the DCDC with respect to that course work. Accordingly, the court does not have the benefit of the BOP's calculation under program statement 5884.02, nor has respondent provided guidance regarding this issue in its opposing papers.

The potential calculation in this case is complicated by a number of factors.  Under BOP policy, an inmate may earn five days of educational good time credits for each month involved in a designated program, up to a maximum applicable to the type of program involved.  28 C.F.R. § 523.32(a).  In this instance the maximum amount of educational good time credits available for a college course is specified at twenty-five days, based upon a program enrollment of five months.  *Id.*  The calculation is further complicated by virtue of the fact that an inmate is limited to five days of educational good time credits per month, even if enrolled in more than one designated program.  28 C.F.R. § 523.32(b).  In this instance, there is an overlap of eight months in the two courses at issue, thereby implicating this section as well.

A district court has authority to review a decision by the BOP, where

12

properly brought before the court in a habeas corpus proceeding, which

shows an abuse of discretion, resulting in an abridgement of the

petitioner's constitutional rights. *Billiteri*, 541 F.2d at 544. As a remedy,

the court can order the BOP to correct the abuses or wrongful conduct

within a fixed period of time, after which, in the case of non-compliance,

the court can grant the writ of habeas corpus and order the petitioner

discharged from custody. *Id.* Given these circumstances, the court feels

that the best option would be to direct the BOP to calculate educational

good time credits owing to the petitioner as a result of the Georgetown

University course work, without regard to the certification by the DCDC

concerning that period of time. Such calculation should be made in

conformity with program statement 5884.82 and applicable corresponding

regulations.

A different situation is presented with regard to the District of

Columbia course work, which was completed while petitioner was in the

custody of the DCDC. The award by DCDC officials of educational good

time credits to the petitioner while he was in custody of that agency is

controlled by a statute which provides that

> [e]very person whose conducts complies with
> institutional rules and who demonstrates desire for

> self improvement by successfully completing an
> academic or vocational program, including special
> education and Graduate Equivalency Diploma
> Programs, shall earn educational good time credits
> no less than 3 days a month and not more than 5
> days a month.  These credits shall not be awarded
> until completion of the academic of vocational
> program

D.C. Code § 24-221.01 (formerly § 24-429).  Since educational good time

credits were awarded – albeit a lesser amount of eighteen days – with

regard to the course in question, it was obviously determined by DCDC

officials to qualify under this provision.  Unfortunately, the record provides

no guidance as to the basis for the decision of DCDC officials to certify

less than the requisite minimum number of educational good time credits

earned.  In response to inquiries from BOP officials at FCI Ray Brook,

Judy Lyons, Deputy Warden, DC Department of Corrections - DC Jail

stated only that "she was familiar with the inmate's case, which was

thoroughly reviewed at the time the credits were approved (September 3,

2003) . . . and further stated that **no further action** will be taken at this

time."  Zgrodnik Decl. (Dkt. No 10) Doc. 1-O (emphasis in original).

Based upon the record now before the court it appears petitioner

has established that the full allotment of educational good time credits for

which he was eligible based upon the University of the District of

14

Columbia course work may well not have been provided to him.

Consequently, petitioner's sentence calculation is potentially in violation of

D.C. law.  As was noted earlier, this court's authority in a case of this

nature is defined by 28 U.S.C. § 2241, which empowers the court, in

relevant part, to grant relief when a petitioner "is in custody in violation of

the Constitution or laws or treaties of the United States[.]"  22 U.S.C. §

2241(c)(3).  The question then becomes whether the laws of the District of

Columbia fall within the ambit of this provision.

   While there are many instances in which the District of Columbia

has federal attributes, this is not one of them.  In *Key v. Doyle*, the

Supreme Court held that a law applicable only in the District of Columbia

is not a "statute of the United States" for purposes of 28 U.S.C. § 1257(1),

a statute providing for the Supreme Court's appellate review of final

judgments rendered by a state's highest court where the validity of a

statute of the United States is at issue.  434 U.S. 59, 60-61, 98 S. Ct. 280,

281 (1977); *see also Palmore v. United States*, 411 U.S. 389, 395, 93 S.

Ct. 1670, 1675 (1973) (D.C. Code, while enacted by Congress, applies

only within the boundaries of the District of Columbia).  In reaching this

conclusion, the Court drew an analogy to the federal-state distinction

between the courts envisioned by Congress when it enacted the District of

Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. No.

91-358 (1970) (codified at D.C. Code § 11-101 *et seq.* (1981)), noting that

no right of appeal to the Supreme Court "should lie. . . when a local court

of the District [of Columbia] invalidates a law of exclusively local

application."  434 U.S. at 64-68, 98 S. Ct. at 283-85; *see also Blair-Bey v.*

*Quick*, 151 F.3d 1036, 1042 (D.C. Cir. 1998) (Reform Act created a "dual

court system").  Tellingly, the Court explained in a footnote that

> [i]t is more the nature of the D.C. Code than its limited
> geographical impact that distinguishes it from other federal
> statutes.  Unlike most congressional enactments, the Code is
> a comprehensive set of laws equivalent to those enacted by
> state and local governments having plenary power to legislate
> for the general welfare of their citizens.

*Key*, 434 U.S. at 67 n.13, 98 S. Ct. at 280 n. 13.

This federal-state distinction has been drawn by both Congress and

the courts in other contexts as well.  *See Moore v. Bledsoe*, No. Civ. A.

7:04-CV-5595, 2005 WL 1243422, at *5 (W.D. Va. May 25, 2005) (citing

*Moss v. Clark*, 886 F.2d 686, 686 (4th Cir. 1989)) (for purposes of equal

protection analysis, inmates imprisoned under D.C. law and inmates

imprisoned pursuant to federal law are not similarly situated); *see also*

*Madley v. United States Parole Comm'n*, 278 F.3d 1306, 1308 (D.C. Cir.

2002) (discussing situations where District of Columbia courts are deemed to be "state courts"); *compare Palmore*, 411 U.S. at 394-95, 93 S. Ct. at 1674-75 (the term "statute of any state" as used in 28 U.S.C. § 1257(2) – a statute providing for the Supreme Court's appellate review of the validity of state statutes considered to be "repugnant to the Constitution, treaties or laws of the United States" – does not include District Columbia statutes).[4]

Unfortunately for petitioner, as the BOP informed him in its responses to his grievances, that agency, although his current custodian, is not authorized to administer educational good time credit to D.C. Code offenders who successfully completed academic programs while confined in the DCDC.  *See id.* Exhs. 1-B, 1-K, 1-L, 1-M.  Since petitioner completed the University of the District of Columbia course while in the custody of the DCDC, the BOP does not have authority to administer the educational good time credits that petitioner requests.  *Id.*  Instead, the

---

[4]      Although *Palmore* and *Key* appear at first blush to contradict one another, the *Key* court acknowledged that the analogy between the states and the District of Columbia was "not perfect" and emphasized that the Court's holdings in both *Key* and *Palmore* were based on the "long-established principle that counsels a narrow construction of jurisdictional provisions authorizing appeals" to the Supreme Court in the absence of clear Congressional intent to expand that court's mandatory jurisdiction.  *Key*, 434 U.S. at 64-65, 98 S. Ct. at 283.

BOP can only apply to a D.C. Code offender's sentence that number of educational good time credits which has been verified and certified in writing by the DCDC.[5]   *See* Zgrodnick Decl. (Dkt. No. 10) Exh. 1-O.

In sum, despite the fact that while petitioner may have a legitimate quarrel regarding the number of educational good time credits certified by the DCDC to the BOP resulting from the challenged University of the District of Columbia educational course work, I am unable to conclude that he is being held in custody in violation of the laws of the United States as a result of not being given proper good time credit based upon those studies.  Accordingly, while petitioner may have recourse elsewhere, this court is not empowered to grant the habeas relief which he now seeks as to that class.  I do find, however, that the BOP abused its discretion when concluding that it was limited, in awarding petitioner educational good time credits with regard to the Georgetown University classes, to those credits certified by the DCDC.  Instead, the BOP was not only permitted – but

---

[5]         It appears that petitioner may not be wholly without recourse.  D.C. Code section 24-221.02 provides for an Institutional Appeals Board to review the granting, withholding, forfeiture, cancellation, and restoration of good time credits.  D.C. Code § 24-221.02.  There is no evidence in the record of any specific attempts by petitioner to pursue this avenue.  It appears that the petitioner may have sought recourse in the District of Columbia courts, but in response was informed that those courts lacked jurisdiction since he was in the custody of the BOP and, accordingly, should more properly file a habeas petition in the district of confinement.  *See* Amended Petition (Dkt. No. 8) § 7(b).

indeed required – to make its own assessment of good time credits to which a petitioner was entitled for that course work, based upon program statement 5884.02, but failed to do so.  I therefore recommend that the BOP be required to reconsider its position with respect to petitioner's Georgetown University studies and calculate the appropriate number of educational credits to award, consistent with BOP policy and the applicable regulations.

IV.   SUMMARY AND RECOMMENDATION

The instant proceeding represents the furtherance of an extensive effort on the petitioner's part to remedy the apparent failure of DCDC officials to provide him with the educational good time credits directed by a District of Columbia statute based upon his attendance and participation in courses offered by the University of the District of Columbia and Georgetown University.  The court empathizes with petitioner's situation and efforts, in the face of what appears to be begrudging actions on the part of the DCDC to award him the educational credits which he has earned under the prevailing statute.  Yet, however sympathetic the court may be to petitioner's situation, it is not legally empowered to remedy the potential miscalculation and award him the additional educational good

19

time credits which he now seeks as to the University of the District of Columbia course work, which was completed while petitioner remained in the custody of the DCDC.  With regard to the Georgetown University course work, however, since it was completed after the transfer of petitioner into the custody of the BOP, that agency was required to make an independent assessment of the educational good time credits deserved by the petitioner, based upon Program Statement no. 5884.02 and applicable, corresponding regulations, but abused its discretion when it failed to make that calculation, believing it instead bound by the DCDC's certification with regard to that course work.  The BOP should therefore be instructed to make an independent calculation of educational good time credits to be allocated to the petitioner based upon his completion of the Georgetown University course in dispute.

Based upon the foregoing, it is hereby

RECOMMENDED that the BOP be directed to make an independent review of the matter with regard to course work completed by the petitioner at Georgetown University and allocate credits owing to him based upon the applicable BOP rules and regulations, but that the petition be DENIED and DISMISSED as to the remaining claim, relating to course

work completed by the petitioner at the University of the District of Columbia while in custody of the DCDC.

NOTICE:  pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation.  Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

Dated:      October 17, 2005
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\ISSUES\habeas corpus\sentence calculation\DC sentences\Thompson.wpd

21